UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON STRONG,

*Plaintiff*,

v.

FORT MYER CONSTRUCTION CORP.,

*Defendant*.

Civil Action No. 25 - 1011 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Brandon Strong was employed as a construction worker at Fort Myer Construction Corp. (FMCC) from August 2023 until his resignation. While working at FMCC, Mr. Strong, who is African American, was subject to derogatory comments about his race. He sued FMCC for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.01 *et seq.* FMCC has now moved to dismiss most of his claims. The Court grants that motion.

## BACKGROUND

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

FMCC, a construction company based in the District of Columbia, employed Mr. Strong as a construction worker beginning in August 2023. Compl. ¶¶ 10–11, ECF No. 1-2. While working at FMCC, Mr. Strong's coworkers and supervisors "frequently made derogatory comments about [his] race and ethnicity." Compl. ¶ 12. Mr. Strong was "often referred to by derogatory names, and his coworkers would use racially insensitive language in his presence." Compl. ¶ 13. At one staff meeting, one of Mr. Strong's supervisors made "derogatory comments

about his race." Compl. ¶ 15. And he was "frequently excluded from team activities and social gatherings." Compl. ¶ 13.

Mr. Strong reported these incidents to FMCC's Human Resources department on multiple occasions. Compl. ¶ 16. But the department dismissed these reports as isolated incidents. Compl. ¶ 19. And FMCC did not take any corrective actions. Compl. ¶ 15. Following Mr. Strong's complaints, FMCC decreased his work hours, reduced his pay, reassigned him to more distant work sites, and offered him less prestigious projects and roles. Compl. ¶ 17–18. At some point, Mr. Strong resigned, though the Complaint does not indicate when that occurred. *See* Compl. ¶ 75.

On November 13, 2024, Mr. Strong sued FMCC in the Superior Court of the District of Columbia. ECF No. 1-1. The Complaint lists eight claims, including claims for racial discrimination, retaliation, and a hostile work environment, under Title VII and the DCHRA. *See* Compl. ¶¶ 23–81. On April 4, 2025, FMCC removed the case to this Court and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Notice of Removal, ECF No. 1; Def.'s Mot. Dismiss, ECF No. 4. The motion is fully briefed and ripe for review. *See* Pl.'s Opp'n, ECF No. 7;[1] Def.'s Reply, ECF No. 10.

---

[1] Mr. Strong missed the deadline to file a response to FMCC's Motion to Dismiss. *See* Local Rule 7(b). In response to a show cause order from the Court, Mr. Strong argued that his Opposition was timely because it was filed within fourteen days of service of the Notice of Removal on April 7, 2025, ECF No. 5—the first document served on his counsel after removal. ECF No. 8 at 2. He further accused FMCC of failing to serve on him the Motion to Dismiss. *Id.* at 3. In its response, FMCC included an exhibit that reflects that FMCC's counsel in fact emailed Mr. Strong's counsel the Motion to Dismiss on April 4, 2025. ECF No. 9-1. Mr. Strong has not further responded. Because the Court ultimately grants FMCC's Motion to Dismiss on its merits, it does not treat that Motion as conceded and it has considered Mr. Strong's arguments in his Opposition. Accordingly, the Court discharges its April 22, 2025, show cause order. But Mr. Strong's counsel is admonished to timely file any opposition to an opposing party's motion.

**LEGAL STANDARD**

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**DISCUSSION**

FMCC seeks dismissal of Mr. Strong's race discrimination, hostile work environment, and constructive termination claims. The Court agrees that these claims are far too conclusory to survive dismissal. Because FMCC has not moved to dismiss Mr. Strong's retaliation claims, those claims will proceed.

**A.   Racial Discrimination**

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (quoting 42 U.S.C.

---

Mr. Strong also filed a motion for leave to file a sur-reply, which FMCC opposes. Mot. Leave Sur Reply, ECF No. 12; Def.'s Opp'n Pl.'s Mot. Leave File Sur-Reply, ECF No. 13. Although the Court is not persuaded that a sur-reply is warranted, it nonetheless grants the motion and has considered Mr. Strong's sur-reply in deciding the instant motion.

§ 2000e–2(a)(1)). The "two essential elements" for a claim of racial discrimination under Title VII and the DCHRA "are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race."[2] *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 596 (D.C. Cir. 2025) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)).

FMCC contends that Mr. Strong's racial-discrimination claim fails at the outset because the Complaint does not adequately allege that Mr. Strong suffered an adverse employment action. Mot. Dismiss at 4. The Court disagrees. It is true that almost all of the Complaint's allegations about adverse actions are conclusory—for example, in the portion of the Complaint that sets forth the Title VII racial discrimination claim, Mr. Strong avers that he was "subjected to adverse employment actions (including discriminatory treatment and hostile work environment)." Compl. ¶ 29. But the Complaint also alleges that Mr. Strong "was frequently excluded from team activities and social gatherings." Compl. ¶ 13. Making every inference in favor of Mr. Strong, *Hettinga*, 677 F.3d at 476, that statement (barely) clears the bar to plausibly allege an adverse employment action.

---

[2] In addressing employment discrimination claims brought under the DCHRA, "courts look to the jurisprudence surrounding Title VII of the Civil Rights Act of 1964." *Burt v. Nat'l Republican Club of Capitol Hill*, 828 F. Supp. 2d 115, 122 (D.D.C. 2011); *see also Johnson v. Dong Moon Joo*, No. 01-cv-0004, 2006 WL 627154, at *19 (D.D.C. Mar. 12, 2006) (using the Title VII framework as a "a short-hand reference" when analyzing claims brought under the DCHRA). *But see District of Columbia v. Bryant*, 307 A.3d 443, 456 (D.C.), *reh'g denied* (Sept. 27, 2024) (declining "to follow the Supreme Court's approach to Title VII retaliation claims when determining what standard to apply to DCHRA retaliation claims"). Here, FMCC contends that Mr. Strong's "Title VII and DCHRA claims are based on the same factual allegations and may be considered under the same analysis." Mot. Dismiss at 3 n.1. Mr. Strong does not address that assertion in his Opposition and therefore has conceded any argument that his Title VII and DCHRA claims should be analyzed differently. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

As the Supreme Court recently made clear, Title VII "targets practices that treat a person worse because of" a protected trait, and that the "'worse' treatment must pertain to—must be 'with respect to'—employment terms or conditions." *Muldrow*, 601 U.S. at 354 (cleaned up). And by "leaving undefined the phrase 'terms, conditions, or privileges of employment,' the Congress evinced an intent to strike at the entire spectrum of disparate treatment in employment." *Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (en banc) (cleaned up). Although "not everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment,'" *id.*, here, the alleged exclusion from "team activities" by "immediate supervisors" plausibly constitutes worse treatment with respect to the terms or conditions of Mr. Strong's employment, Compl. ¶ 13.

FMCC cites *Hayslett v. Perry*, 332 F. Supp. 2d 93 (D.D.C. 2004), to argue that exclusions from job-related meetings do not amount to adverse employment actions. In *Hayslett*, the plaintiff alleged that "she was excluded from certain job-related meetings in retaliation" for filing a complaint with the Equal Employment Opportunity Commission—meetings she had been invited to before she filed the complaint. *Id.* at 105. The court held that these allegations were insufficient to state a claim for Title VII retaliation because the plaintiff "identified no specific meetings, nor has she demonstrated how her alleged exclusion from unspecified meetings had any adverse impact on her employment terms or conditions or caused any objectively tangible harm." *Id.* But that decision is not persuasive here for two reasons.

First, the court there was analyzing a retaliation claim, not a racial-discrimination claim. *Id.* And the retaliation and discrimination provisions of Title VII contain "fundamental difference[s]" that have resulted in different standards for determining what constitutes an adverse employment action. *Chambers*, 35 F.4th at 876–77; *accord Muldrow*, 601 U.S. at 357–58. Second,

5

the *Hayslett* court relied on the D.C. Circuit's opinion in *Brown v. Brody*, 199 F.3d 446 (1999), which the circuit recently overruled in its en banc decision in *Chambers*, 35 F.4th at 872. Indeed, the Supreme Court itself has since made clear that an adverse employment action for purposes of a Title VII discrimination claim does not have to involve harm that "was 'significant[,]' [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar"—such as the "objectively tangible harm" standard applied by the *Hayslett* court. *Muldrow*, 601 U.S. at 355 (citation omitted). Accordingly, the Court declines to follow *Hayslett* with respect to this claim.

But even though Mr. Strong has plausibly alleged an adverse employment action, he must also allege that FMCC took that action "because of [his] race." *See Shanks*, 134 F.4th at 596. FMCC contends that Mr. Strong has failed to do so. Mot. Dismiss at 4. The Court agrees. Although the Complaint states that Mr. Strong's alleged exclusion from team activities was part of a course of "continuous discriminatory treatment," it alleges no facts whatsoever supporting that these exclusions were on the basis of Mr. Strong's race. Compl. ¶ 13. True, the Complaint states that FMCC employees referred to Mr. Strong using "derogatory names" and used "racially insensitive language in his presence." *Id.* It also alleges that a FMCC supervisor made derogatory comments about Mr. Strong's race at a staff meeting. Compl. ¶ 15. But these other instances of offensive and shameful conduct have no bearing on whether FMCC excluded Mr. Strong from team activities because of his race. *See Zano v. McDonough*, No. 22-cv-2748, 2024 WL 2699976, at *6 (D.D.C. May 24, 2024) ("[W]hile the plaintiff alleges that her supervisors were discriminatory in their treatment of her, she fails to provide any factual information linking the alleged adverse actions to her race[.]"); *see also Mitchell v. Garland*, No. 23-cv-2412, 2024 WL 3251217, at *2 (D.D.C. July 1, 2024) ("While a Title VII plaintiff need not establish a prima facie case of discrimination at the

pleading stage . . . she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint.").

Mr. Strong, for his part, principally focuses on alleged adverse employment actions other than his exclusion from team activities. He argues that "he suffered tangible changes to his employment conditions" by being reassigned "to less favorable . . . worksites as direct punishment for raising concerns of discrimination" and suffered an attendant reduction in pay and opportunities. Opp'n at 6. But as FMCC correctly observes, the Complaint alleges that this treatment was because of Mr. Strong's reports of discriminatory conduct, not his race. Mot. Dismiss at 4–5. The Complaint states that these alleged reassignments "[f]ollow[ed] his complaints" and were "attempts to penalize [Mr. Strong] for speaking out against [FMCC's] discriminatory practices." Compl. ¶¶ 17–18. Thus, Mr. Strong is wrong when he argues that the Complaint indicates that these reassignments "were directly tied to racial animus initially and exacerbated by retaliation for protected activities." Opp'n at 7. To the contrary, the Complaint only links these reassignments to his reports of discriminatory conduct. *See Jones v. Granholm*, No. 20-cv-472, 2021 WL 2530677, at *16 (D.D.C. June 21, 2021) ("Plaintiff's pleadings connect her alleged adverse actions to her EEO complaint and, consequently, sound in retaliation.").

In sum, although the Court in no way condones the racist language that Mr. Strong alleges his coworkers and supervisors used, Mr. Strong's Complaint does not state sufficient factual material to support that he suffered an adverse employment action because of his race.

**B.      Hostile Work Environment**

Next, FMCC contends that Mr. Strong's Complaint is insufficient to state a hostile work environment claim. Mot. Dismiss at 5. To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult'

7

that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*

FMCC argues that the Complaint's relevant allegations are conclusory statements that cannot state a claim. Mot. Dismiss at 6–7. The Court agrees. The Complaint states that Mr. Strong "was subjected to a hostile work environment where he encountered racial slurs, discriminatory comments, and exclusion from key workplace activities and opportunities." Compl. ¶ 26. And, the Complaint says, "[t]hese discriminatory practices were pervasive and severe enough to alter the conditions of his employment and create an abusive working environment." *Id.* But these statements do little more than "parrot the legal standard and cannot alone survive a motion to dismiss." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91 (D.D.C. 2014).

The portions of Mr. Strong's Complaint that are more concrete are also not sufficient to state a hostile work environment claim. As mentioned, the Complaint alleges that Mr. Strong was "often referred to by derogatory names," "his coworkers would use racially insensitive language in his presence," and he "was frequently excluded from team activities and social gatherings." Compl. ¶ 13. These, however, are merely conclusory statements about the frequency and severity of FMCC's alleged discriminatory treatment. *See Outlaw*, 49 F. Supp. 3d at 91 (describing as "bald legal conclusions" statements that the plaintiff suffered "a persistent pattern of severe and pervasive harassment" and was "routinely humiliated" by supervisors); *see also Iqbal*, 556 U.S. at 678 (explaining that "mere conclusory allegations" in support of "recitals of the elements of a

cause of action" do not suffice to state a claim). True, the Complaint describes one instance when "a supervisor publicly humiliated [Mr. Strong] by making derogatory comments about his race during a staff meeting." Compl. ¶ 15. Although the Complaint's description of this incident is lacking in specifics, this is the sort of allegation that can support a hostile workplace claim. Yet "[e]ven a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

Mr. Strong is correct that the plausibility of a hostile work environment claim depends on all the relevant conduct taken together. Opp'n at 11. But the Complaint provides next to no details about the substance or frequency of the conduct he suffered. Because Mr. Strong's Complaint does little more than insist that his experiences meet the standard for a hostile workplace claim, those claims cannot proceed.

### C. Constructive Discharge

Finally, FMCC argues that Mr. Strong's Complaint fails to adequately state a claim for constructive discharge.[3] To succeed on a constructive discharge claim, a plaintiff must show that "(1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Bajaj v. Turner*, 778 F. Supp. 3d 151, 192 (D.D.C. 2025) (quoting *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011)). "In this circuit, a finding of constructive discharge depends on whether the employer deliberately made working conditions intolerable and drove the employee out." *Id.* (quotation marks omitted) (quoting *Mungin v. Katten*

---

[3] Mr. Strong's Complaint refers to the claims as "constructive termination" claims. *E.g.*, Compl. ¶ 62. The term "constructive termination" is sometimes used as a synonym for a "constructive discharge" claim. *See, e.g.*, *Boone v. MountainMade Found.*, 64 F. Supp. 3d 216, 239 (D.D.C. 2014). And in Mr. Strong's Opposition, he refers to the claims as "constructive discharge" claims. *E.g.*, Opp'n at 12.

*Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997)). And a plaintiff asserting a constructive discharge claim "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.* (quotation marks omitted) (quoting *Brown v. District of Columbia*, 768 F. Supp. 2d 94, 101 (D.D.C. 2011), *aff'd*, 493 F. App'x 110 (D.C. Cir. 2012)).

Mr. Strong's constructive discharge claims largely rest on the conclusory allegations that the Court addressed above. *See* Compl. ¶ 58. The Complaint's only additions are allegations that Mr. Strong reported his mistreatment to management and FMCC failed to remedy it. Compl. ¶ 59. And although these statements support an inference that FMCC was aware of the conduct challenged by Mr. Strong, they do not rescue the Complaint's conclusory allegations about the frequency and severity of the harassment Mr. Strong experienced. *See Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (explaining that a constructive discharge claim "requires 'something more' than, say, a hostile work environment claim alone" (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004))).

In his Opposition, Mr. Strong contends that his alleged reassignment to undesirable work sites in retaliation for his reports of racial discrimination also support his constructive discharge claim. Opp'n at 12–13. Although the reassignments may well be adequate to state a claim for retaliation—indeed, FMCC has not moved to dismiss Mr. Strong's retaliation claims—they do not push the alleged discriminatory conduct over the line to establish constructive termination. *See Qihui Huang v. Wheeler*, 215 F. Supp. 3d 100, 113 (D.D.C. 2016) ("[A] failure to promote, a change in job duties, a transfer, criticism, pressure from a supervisor, or being ignored by co-workers are not the sort of 'aggravating factors' necessary to support a constructive-discharge

claim." (quoting *Veitch v. England*, 471 F.3d 124, 131 (D.C. Cir. 2006))). Accordingly, Mr. Strong's constructive discharge claims also cannot proceed.[4]

## CONCLUSION

For the foregoing reasons, the Court grants FMCC's Motion to Dismiss, ECF No. 4. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date:   September 15, 2025

---

[4] Mr. Strong's Complaint also includes two claims styled "Wrongful Termination in Violation of Title VII" (although one of the claims appears to rely on the DCHRA). Compl. ¶¶ 70–81. These claims allege that Mr. Strong was "effective[ly] terminated" and "forced to resign." Compl. ¶¶ 73, 80. In arguing for dismissal of these claims in its Motion to Dismiss, FMCC treats these claims as equivalent to Mr. Strong's constructive termination claims. *See* Mot. Dismiss at 9. And by failing to argue that these claims should be treated differently than his constructive termination claims, Mr. Strong has conceded any such argument. *See Hopkins*, 284 F. Supp. 2d at 25.