**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRANDON STRONG,<br>*Plaintiff*,<br>v.<br>FORT MYER CONSTRUCTION CORP.,<br>*Defendant*. | Civil Action No. 25 - 1011 (SLS)<br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

In September 2023, Fort Myer Construction Corp. (FMCC) hired Brandon Strong as a pipe layer. Roughly two months later, after he complained to Human Resources about an incident with his coworkers, FMCC proposed a reassignment. But the next day, Mr. Strong submitted a doctor's note indicating that he was unsure when he could return to work, and he never returned to FMCC. Mr. Strong brought this lawsuit alleging violations of Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act (DCHRA). The Court previously dismissed all but his retaliation claims. FMCC now moves for summary judgment on those remaining claims. Because no reasonable jury could find for Mr. Strong, the Court grants FMCC's motion.

**BACKGROUND**

**A. Factual Background**

The Court draws the facts from the Parties' Joint Statement of Undisputed Facts and the underlying record. *See* Joint Statement of Undisputed Facts (JSOF), ECF No. 30; Def.'s Statement of Undisputed Material Facts and Mem. in Support of Mot. for Summ. J. (DSOF & Mem. in Support), ECF No. 27-1; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (PSOF), ECF No. 28-1; Def.'s Reply to Mot. for Summ. J. & Resp. to Pl.'s Additional Material Facts

(Reply), ECF No. 29. The Court assumes the facts in those statements to be true unless they have been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

On September 12, 2023, FMCC hired Brandon Strong as a pipe layer at a base hourly rate of $23.00. JSOF ¶¶ 2, 4; *see also* Offer Letter, Def.'s Ex. 3, ECF No. 27-4. About a week later, Mr. Strong reported to the "Old Branch Road/Clinton" (Old Branch Road) worksite for his first assignment. JSOF ¶¶ 4–6. The commute from his home to the worksite was about one hour and fifteen minutes by car. JSOF ¶ 5. The Old Branch Road worksite "had a separate contract providing for $25.19/hour for regular time worked[,]" which became Mr. Strong's hourly wage starting on September 22. JSOF ¶ 4.

On November 14, 2023, Mr. Strong worked his usual shift at the Old Branch Road worksite. JSOF ¶ 6. On November 15, he called in sick and received paid time off at his base rate of $23.00 per hour. JSOF ¶ 7. Then on November 16, Mr. Strong "submitted a written complaint to FMCC alleging privacy violations, harassment, humiliation, and discriminatory treatment arising from the events that occurred during his shift on November 14, 2023." JSOF ¶ 8. According to the complaint, while Mr. Strong and two of his colleagues were carpooling to the Old Branch Road worksite, a coworker asked to use Mr. Strong's phone and he obliged. *See* Written Complaint, Def.'s Ex. 5, ECF No. 27-6. Mr. Strong noticed her "going through" the phone and "snatched" it. *Id.* at 2. When he asked her why she was going through his phone, "she laughed and spoke in Spanish." *Id.* Mr. Strong does not "speak fluent Spanish" but does "understand[] certain

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

words," *id.* at 4, and "under[stood] what was being talked about," *id.* at 2. He "felt violated and was stuck on mute" while his two coworkers "cont[i]nued to talk about what was seen." *Id.* During the workday, Mr. Strong "felt and noticed the change in everyone and said to [him]self everyone knows." *Id.* at 4. "The whole day [he] was feeling discriminated against. Being as though [his] sexual orientation was out out [sic] . . . due to her going through [his] phone without permission." *Id.* at 6.

The same day Mr. Strong submitted his written complaint, he spoke to Human Resources about a possible reassignment. JSOF ¶ 9. He expressed an interest in being reassigned to a two-person electrical team with a different crew, although his resume on file with FMCC "did not identify any experience in electrical." JSOF ¶¶ 9–10. FMCC then "proposed that [Mr. Strong] report to a different worksite" in Virginia, instead of transferring to an electrical team. JSOF ¶¶ 11–12. The proposed reassignment "included job responsibilities that would generally be the same as before, but [it] was a base-rate assignment." JSOF ¶¶ 12–13; Strong Dep., Def.'s Ex. B, ECF No. 29-2, 58:3-5. Mr. Strong's commute to the Virginia worksite would have been approximately forty minutes by car. JSOF ¶ 12.

Mr. Strong "never reported to the proposed Virginia worksite." JSOF ¶ 14. Instead, on November 17, Mr. Strong "submitted a doctor's note which did not include a definite return to work date." JSOF ¶ 15. Eventually, he found work elsewhere. PSOF ¶ 20.[2]

---

[2] Although not relevant to resolving FMCC's motion, the Court notes that FMCC initiated an investigation a day after Mr. Strong's written complaint. DSOF ¶ 10. Based on interviews with five FMCC employees, including Mr. Strong and the coworkers involved in the interaction on November 14, the investigator was unable to corroborate the events described in Mr. Strong's complaint. Page Decl., Def.'s Ex. A, ECF No. 29-1 at 27.

**B. Procedural Background**

In November 2024, Mr. Strong sued FMCC in the Superior Court of the District of Columbia. Compl., ECF No. 1–1. His Complaint listed eight claims, including racial discrimination, retaliation, and hostile work environment under Title VII and the DCHRA. *See* Compl. ¶¶ 23-81, ECF No. 1-2. In April 2025, FMCC removed the case to this Court and moved to dismiss all but two of Mr. Strong's claims under Federal Rule of Civil Procedure 12(b)(6). Notice of Removal, ECF No. 1; Def.'s Mot. Dismiss, ECF No. 4. The Court granted that motion. *See* Mem. Op. at 11, ECF No. 14. After discovery, FMCC moved for summary judgment on Mr. Strong's two remaining claims: retaliation under Title VII, 42 U.S.C. § 2000e-3(a) (Count Two), and the DCHRA, D.C. Code § 2-1401.01 *et seq*. (Count Four). *See* Def.'s Mot. Summ. J., ECF No. 27. The motion is fully briefed and ripe for review. *See* Pl.'s Opp'n to Mot. Summ. J. (Opp'n), ECF No. 28; Reply.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The movant bears the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the nonmovant must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up). In considering a motion for summary judgment, a court "may not make credibility determinations or otherwise weigh the evidence." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016). Instead, it must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* Summary judgment is appropriate only if, viewing the evidence in that light, the court concludes that no reasonable jury could find for the nonmovant. *See Steele v. Mattis*, 899 F.3d 943, 947 (D.C. Cir. 2018). Finally, "[w]hen

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

The antiretaliation provision of Title VII of the Civil Rights Act of 1964 forbids an employer from discriminating against an employee "because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). The DCHRA prohibits retaliation against a person because "that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing authorized under this chapter." D.C. Code § 2-1402.61(b). "[R]etaliation claims brought under the DCHRA are analyzed in the same manner as such claims arising under Title VII." *Ndonji v. InterPark, Inc.*, 768 F. Supp. 2d 263, 287 (D.D.C. 2011).

Title VII "retaliation claims are subject to the familiar, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," under which "[a] plaintiff must first establish her prima facie case." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). To do so, she "must show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).

Here, FMCC does not dispute that Mr. Strong engaged in statutorily protected activity when he submitted a written complaint to Human Resources. *See* DSOF & Mem. in Support at 5–7. Instead, it argues that Mr. Strong cannot point to a materially adverse action to support his prima facie case of retaliation. *Id.* The Court agrees. The record reflects that within a day of receiving Mr. Strong's written complaint, FMCC proposed a reassignment to a different worksite with a

shorter commute at the same base rate at which Mr. Strong was hired. JSOF ¶¶ 9–16. No reasonable jury could find that FMCC's proposal was adverse. To state the obvious, FMCC made no changes to Mr. Strong's employment. Rather, it gave Mr. Strong the option to move to a different position. FMCC's proposal certainly could not "dissuade a reasonable worker from making or supporting a charge of discrimination" against their employer. *Burlington*, 548 U.S. at 57.

In urging otherwise, Mr. Strong argues that there are factual questions precluding summary judgment. For one, he claims that "[t]here is a direct factual dispute over whether the proposed transfer would have lowered [his] pay." Opp'n at 5; *see also* Opp'n at 7 (claiming that he was "immediate[ly] direct[ed] to a lower-paying base-rate job with another large crew"). But again, FMCC merely proposed a reassignment, JSOF ¶ 11, which is not an adverse employment action. Mr. Strong was free to accept that proposal, reject it and continue in his position at the Old Branch Road worksite, or have further discussions about alternate positions. Indeed, Mr. Strong did not understand FMCC's proposal as a directive. Strong Dep., Def.'s Ex. 2, ECF No. 27-3 at 58:10–16 ("Q: All right. Let's see here. Would you also have been able to return to your original crew at the [Old Branch Road] job site?" . . . "A: Probably. Yes, I'm sure I would have. I'm sure I would have."). So any factual disputes about Mr. Strong's pay are irrelevant.

Mr. Strong does not cite a single case finding that a proposed reassignment constitutes an adverse action. Other than the seminal retaliation case, *Burlington*, 548 U.S. 53, he relies primarily on *Ginger v. District of Columbia*, 527 F.3d 1340 (D.C. Cir. 2008). But *Ginger* does not help him. In *Ginger*, police officers brought a Title VII action after the District reorganized their unit in a manner that resulted in a loss of hours. *Id.* at 1341–44. The D.C. Circuit found that the reorganization constituted an adverse employment action because "the officers were paid less for

working a substantially more difficult schedule." *Id.* at 1344. But here, it is undisputed that FMCC did not reassign Mr. Strong. *See* JSOF ¶ 11; DSOF & Mem. in Support ¶ 23. That is dispositive.

Mr. Strong's remaining claimed factual disputes are even further afield. He says that there are factual disputes over "whether FMCC was going to investigate or instead told [him] there would be no investigation[,]" Opp'n at 5, and "whether [he] abandoned his job or instead remained willing to work if FMCC removed him from the retaliatory arrangement[,]" Opp'n at 6. But neither helps him identify an adverse employment action.[3]

At bottom, the record reflects that after receiving Mr. Strong's complaint about his coworkers, FMCC laudably sprang into action. It had discussions with him that very day and proposed a solution. Mr. Strong did not accept that proposal or further engage with FMCC. Rather, he simply stopped showing up for work. On this record, no reasonable jury could find that FMCC's action was materially adverse. He thus fails to establish a prima facie case of retaliation, ending the *McDonnell Douglas* inquiry.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment, ECF No. 27. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: November 2, 2026

---

[3] At various points, Mr. Strong also seems to take issue with the fact that FMCC did not transfer him to an electrical placement instead. *See, e.g.*, Opp'n at 7 (noting that "he was told: no electrical placement"). He does not bother to explain how this is legally relevant. But the Court notes that Mr. Strong's resume on file with FMCC "did not identify any experience in electrical," JSF ¶¶ 9–10, which might explain why FMCC did not propose Mr. Strong's preferred transfer.